UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GETU TAMRAT,

                       Petitioner,

      v.

JULIO HERNANDEZ, *et al*.,[1]

                    Respondents.

Case No. C26-1169-MLP

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER

Petitioner Getu Tamrat is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. (*See* dkt. # 8.) Also pending before the Court is Petitioner's motion for temporary restraining order ("TRO") seeking to prevent his transfer or removal from the United States or this jurisdiction while the Court considers his petition for writ of habeas corpus. (Dkt. # 9.) Respondents have filed a return to the petition and a response opposing Petitioner's motion for TRO. (Dkt. # 13.) Respondents submitted in support of their return and response the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Respondents have substituted Julio Hernandez for Drew Bostock, Markwayne Mullin for Kristi Noem, and Todd Blanch for Pamela Bondi. (*See* dkt. # 13 at 1 n.1.)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 1

declarations of Janese Mull, Acting Deputy Assistant Director of ICE's Office of Enforcement and Removal Operations ("ERO"), Removal Management Division South (dkt. # 14), ICE Deportation Officer Karl Douglas (dkt. # 15), and Respondents' counsel Michelle Lambert (dkt. # 16). The Court, having reviewed the parties' submissions, and the governing law, DENIES Petitioner's petition for federal habeas relief and his motion for TRO (dkt. ## 8-9).

## I.      BACKGROUND

### A.      Removal Proceedings

Petitioner is a native and citizen of Ethiopia. (Douglas Decl., ¶ 3; Lambert Decl., Ex. C at 1-2.) He entered the United States on or about November 6, 2023, and was encountered by United States Border Patrol near San Ysidro, California after unlawfully entering the country from Mexico. (Douglas Decl., ¶ 4; Lambert Decl., Ex. C at 2.) Petitioner was thereafter released on an Order of Release on Recognizance which included various reporting requirements. (*See* Douglas Decl., ¶¶ 5-6.)

On November 9, 2023, Petitioner was served with a Notice to Appear ("NTA") charging him with being removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), thus placing him in removal proceedings. (*See* Lambert Decl., Ex. A.) A superseding NTA was issued on July 9, 2024, which was mailed to Petitioner at his address of record in Los Angeles, California. (Lambert Decl., Ex. B.) The superseding NTA contained the same charge as the original NTA, and it directed Petitioner to appear before an immigration judge ("IJ") in Los Angeles on June 17, 2025. (*Id.*)

On December 4, 2024, Petitioner failed to report for his first scheduled check-in. (Douglas Decl., ¶ 7.) On April 5, 2025, Petitioner was arrested by the Clackamas County Sheriff's Office on charges of rape in the first degree, attempted rape in the first degree, assault

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 2

in the fourth degree, coercion, and strangulation constituting domestic violence. (*See id.*, ¶ 8; Lambert Decl., Ex. C at 2.) Officer Douglas avers that those charges remain pending. (Douglas Decl., ¶ 8) Petitioner, on the other hand, asserts the charges were dismissed due to lack of evidence at some point after he was arrested by ICE. (Dkt. # 8 at 4.)

Petitioner was instructed by ICE officials to report to ERO on August 9, 2025, but he failed to appear. (Douglas Decl., ¶ 9.) It was thereafter discovered that Petitioner had moved from California to Oregon without informing ERO or the immigration court of his change of address. (*Id.*) On August 25, 2025, Petitioner's immigration attorney reported in person to ERO and advised that Petitioner was in Oregon. (*Id.*, ¶ 10.) Petitioner's attorney was provided information on the local ERO office in Oregon so that Petitioner could report in person. (*Id.*). On September 8, 2025, Petitioner reported to ERO Portland and was taken into custody. (*See id.*, ¶ 11; Lambert Decl., Ex. D.) Petitioner was served a notice of custody redetermination advising that he would be detained, and he was transported to NWIPC where he remains. (*See* Douglas Decl., ¶ 11; Lambert Decl., Ex. E.)

Petitioner appeared before an IJ for a merits hearing on October 31, 2025, and the IJ sustained the charge of removability and ordered him removed to Ethiopia, but also granted him withholding of removal. (Douglas Decl., ¶ 12; Lambert Decl., Ex. F.) Both parties waived appeal and the removal order became final on that date. (*See id.*)

ERO thereafter decided to pursue third-country removal for Petitioner. (Douglas Decl., ¶ 13.) ERO sent a request to Chinese officials to accept Petitioner on or about December 20, 2025, but the request was denied. (*Id.*, ¶ 14.) On February 20, 2026, ERO met with Petitioner to discuss prospective third countries for removal, but Petitioner declined to name a third country. (*Id.*, ¶ 16.)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 3

ICE subsequently identified Equatorial Guinea as a third country that would accept Petitioner, and Petitioner was served with a notice of removal to Guinea on April 3, 2026. (Mull Decl., ¶ 4; Douglas Decl., ¶ 18; Lambert Decl., Ex. G.) Petitioner claimed fear of removal to Equatorial Guinea and his case was transferred to United States Citizenship and Immigration Service ("USCIS") for a fear screening. (Douglas Decl., ¶ 18.) On April 10, 2026, USCIS made a negative fear determination regarding Petitioner's claim of fear of being removed to Equatorial Guinea. (*Id.*, ¶ 19.) Petitioner is currently scheduled to be removed to Equatorial Guinea on April 28, 2026. (*Id.*, ¶ 22.)

**B.     Custody Review**

On December 24, 2025, ERO served Petitioner with a Notice to Alien of File Custody Review notifying him that if ICE was unable to effectuate his removal from the United States within the 90-day removal period, as set forth in INA § 241(a), 8 U.S.C. § 1231(a), his case would be reviewed for consideration of release on conditions. (*See* Douglas Decl., ¶ 15; Lambert Decl. Ex. H.) Petitioner was advised that his status would be reviewed on or about January 29, 2026, that various cited factors may be considered in determining whether he should be released, and that he could submit documentation in support of release prior to the date set forth in the notice. (Lambert Decl., Ex. H at 1.) Petitioner refused to sign the notice when it was served on him at NWIPC. (*See* Douglas Decl., ¶ 15; Lambert Decl., Ex. H at 2.)

On March 10, 2026, ERO recommended continued detention for Petitioner following the post-order custody review, and on April 21, 2026, ERO finalized the determination to continue Petitioner's detention. (Douglas Dec., ¶¶ 17, 20; Lambert Decl., Ex. I.) This determination was based on ICE's conclusion that Petitioner was a danger to the community given his criminal

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 4

history, and that he was a flight risk given his immigration history and lack of community ties. (Lambert Decl., Ex. I at 1.)

### C.    Habeas Proceedings

Petitioner filed this federal habeas action on April 7, 2026. (*See* dkt. # 1.) Petitioner filed an amended petition on April 10, 2026, after being advised that his original petition was deficient because it had not been signed by Petitioner nor had Petitioner's counsel provided proper verification of the petition as required by Local Civil Rule ("LCR") 100(e). (*See* dkt. ## 5, 8.) The amended petition corrected this deficiency but was otherwise identical to Petitioner's original petition. (*See* dkt. # 8-1.)

On April 9, 2026, Petitioner filed a motion for TRO seeking an order preventing Respondents from transferring or removing him from this Court's jurisdiction or the United States while this matter is pending. (Dkt. # 4 at 7.) On the same date, this Court issued an Order denying Petitioner's motion, finding that Petitioner had not demonstrated his transfer or removal was imminent, nor had he otherwise demonstrated the requested relief was necessary to preserve the status quo. (Dkt. # 6.)

On April 19, 2026, Petitioner file a second motion for TRO, once again seeking an order preventing Respondents from transferring or removing him from this Court's jurisdiction or the United States while this federal habeas action is pending. (Dkt. # 9.) The Court directed Respondents to file a response to the motion in conjunction with their return, and directed that Petitioner not be removed from the United States or this jurisdiction without further order from the Court. (Dkt. # 12.) Respondents filed their return and response to the motion for TRO on April 21, 2026. (Dkt. # 13.) Respondents argue therein that Petitioner's habeas claims lack merit, and that he fails to demonstrate an entitlement to preliminary injunctive relief. (*See id.*)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 5

## II.    DISCUSSION

### A.    Habeas Claims

Petitioner alleges in his amended petition that his detention violates the INA, 8 U.S.C. § 1231(a)(3), and the Administrative Procedure Act ("APA"), because he has been held in custody beyond the 90-day removal period set forth in § 1231(a)(1)(A). (*See* dkt. # 8 at 8-11, 15-16.) Petitioner maintains he should have been released on supervision after the removal period expired consistent with the language of § 1231(a)(3). (*See id.*) Petitioner further alleges that his ongoing detention violates the Fifth Amendment of the United States Constitution and the APA because Respondents failed to comply with the regulatory framework set forth in 8 C.F.R. § 241.4, which requires a custody review be conducted prior to the expiration of the mandatory detention period when the government seeks to continue detention beyond that period. (*See id.* at 11-17.)

### B.    Detention Under 8 U.S.C. § 1231

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens such as Petitioner who have been ordered removed. Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). The parties agree that the removal period here expired on January 29, 2026, 90 days after entry of Petitioner's final order of removal. (*See* dkt. ## 8 at 4, 13 at 7, 9.) The parties disagree, however, about whether Petitioner's continued detention after the expiration of the 90-day period is lawful.

Petitioner argues that once the 90-day mandatory detention period expired, DHS was required, under the express language of § 1231(a)(3), to release him on conditions of supervision. (*See* dkt. # 8 at 8-11.) Section 1231(a)(3) provides that if a noncitizen "does not

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 6

leave or is not removed within the removal period," he "shall be subject to supervision under the regulations prescribed by the Attorney General." Petitioner argues that this "command is mandatory" and that his continued detention after expiration of the 90-day removal period, in lieu of supervision, is unlawful. (*See* dkt. # 8 at 8-11.)

However, as Respondents correctly argue, Petitioner's interpretation of § 1231(a)(3) disregards other relevant portions of the statute; in particular, § 1231(a)(6), which provides that after the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are removable under § 1182, or to release them on supervision. (Dkt. # 13 at 9.) The IJ concluded Petitioner was removable, as charged, under § 1182(a)(6)(A)(i). (Lambert Decl., Ex. F.) Petitioner's detention beyond the 90-day removal period is therefore authorized under § 1231(a)(6).

While § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States, and determined that six months is the "presumptively reasonable" period during which DHS may detain a noncitizen following entry of a final removal order. *Id.* at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Here, Petitioner's detention has yet to reach the six-month mark, and the record makes clear that his removal is imminent. Thus, his continued detention does not implicate the constitutional concerns addressed by the Supreme Court in *Zadvydas*.

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 7

**C.      Custody Review Process Under 8 C.F.R. § 241.4**

Petitioner argues that even if the Court disagrees with his argument that his ongoing detention violates 8 U.S.C. § 1231(a)(3), his detention is also unlawful because Respondents failed to comply with the regulatory framework set forth in 8 C.F.R. § 241.4. Section 241.4 governs the continued detention of inadmissible noncitizens beyond the removal period if a noncitizen's removal has not been effectuated within the removal period. Among the regulatory requirements set forth therein is that, prior to the expiration of the removal period, ICE officials conduct a post-order custody review to determine whether the noncitizen should be continued in detention or should be released. *See* 8 C.F. R. § 241.4(h), (k). Petitioner maintains that Respondents did not provide the required custody review prior to the expiration of the removal period, did not provide him the notice contemplated by the regulation, and did not issue a timely written determination authorizing his continued detention. (Dkt. # 8 at 11-12.)

Respondents argue that ICE conducted the requisite custody review and that Petitioner's due process and APA claims relating to the application of 8 C.F.R. § 241.4 fail. (Dkt. # 13 at 10-11.) Respondents have presented evidence demonstrating that ICE initiated the custody review process in Petitioner's case on December 24, 2025, by notifying him that his custody status would be reviewed on or about January 29, 2026, the date the removal period expired, and advising him that he could submit any documentation he wished to have reviewed prior to that date. (Lambert Decl., Ex. H.) The evidence also demonstrates, however, that though the custody review process was initiated, and apparently scheduled, in a timely fashion and in accordance with the regulations, the process was not completed in a timely fashion. Indeed, the initial recommendation regarding Petitioner's continued detention was not made until March 10, 2026, and a final determination was not made until April 21, 2026, many weeks after the removal

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 8

period expired.[2] (Douglas Decl., ¶¶ 17, 20; Lambert Decl., Ex. I.) The record therefore confirms that Respondents did not fully comply with the requirements of 8 C.F.R. § 241.4(k).

The next question the Court must consider is whether Respondents' failure to timely complete the custody review process entitles Petitioner to relief on his due process and APA claims. Respondents argue it does not. (*See* dkt. # 13 at 10.) With respect to Petitioner's due process claim, Respondents argue that Petitioner is not entitled to relief because he cannot show he was prejudiced by the fact that the decision was not issued prior to January 29, 2026, as necessary to establish a due process violation. (*Id*. at 10-11 (citing *Circu v. Gonzales*, 450 F.3d 990, 994-95 (9th Cir. 2005) ("[E]stablishing a due process violation always requires a showing of prejudice[.]")).)

While the Court does not condone the apparently dilatory execution of Petitioner's post-order custody review, the evidence in the record reveals no prejudice. Petitioner was given timely notice of the review and an opportunity to submit documentation in support of his release, and the evidence suggests he declined to participate in the process as he refused to sign the acknowledgement of service of the notice advising him of the custody review, and he also declined to be interviewed for purposes of the review. (*See* Lambert Decl., Exs. H at 2, I at 2.) The evidence also suggests that even if a custody review determination had been made on or about January 29, 2026, as contemplated by both the regulations and the notice of custody review provided to Petitioner, it is unlikely the outcome of the review would have been different given the ultimate conclusion that Petitioner presented both a danger to the community and a

---

[2] Notably, the final detention decision was made on the day Respondents' return to Petitioner's federal habeas petition was due, suggesting, though not conclusively establishing, that Petitioner's federal habeas petition prompted issuance of the final decision.

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 9

flight risk if released. For these reasons, the Court finds Petitioner has not established a due process violation relating to the application of 8 C.F.R. § 241.4.

With respect to Petitioner's APA claim, Respondents assert that this Court does not have jurisdiction over the claim, arguing that the APA does not apply where other adequate statutory remedies exist. (Dkt. # 13 at 11.) Respondents maintain that habeas is an adequate remedy. (*Id.*) Respondents further argue that, in order to be reviewable under the APA, an action must be a "final agency action" and the challenged action here does not fit within that category. (*See id*.)

The APA provides a right to judicial review of all "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In general, for an agency action to be final, it must satisfy two conditions: (1) "the action must mark the consummation of the agency's decisionmaking process, . . . it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett v.* Spear, 520 U.S. 154, 177-78 (1997) (internal quotations and citations omitted). Assuming without deciding that the APA properly applies in the context of a federal habeas action, Petitioner fails to demonstrate the agency action challenged here, *i.e.*, failure to undertake the custody review required by 8 C.F.R. § 241.4 prior to expiration of the removal period, constitutes final agency action for purposes of the APA. Petitioner also fails to demonstrate that his APA claim, even if successful, would entitle him to release from custody at this juncture as his removal appears imminent. Accordingly, this Court finds Petitioner's APA claim is without merit.

### D. Motion for TRO

As noted above, Petitioner has filed a motion for TRO seeking to stay his removal prior to resolution of this federal habeas action. As this Court has now reviewed Petitioner's claims

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 10

and determined that Petitioner is not entitled to the relief he seeks by way of this federal habeas action, *i.e.*, release from custody, his motion is effectively moot. The Court observes as well that Petitioner's impending removal will essentially provide Petitioner the relief he seeks as Petitioner, upon removal, will be released from the detention he challenges here.

### III.    CONCLUSION

Based on the foregoing, Petitioner's amended petition for writ of habeas corpus (dkt. # 8) and his motion for temporary restraining order (dkt. # 9) are DENIED, and this action is DISMISSED. The Court's prohibition on Petitioner being removed from either the United States or this jurisdiction (*see* dkt. # 12 at 2) is LIFTED.

DATED this 24th day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS - 11